**COFFEY & ASSOCIATES**
Gregory J. Coffey, Esq.
NJ Attorney ID No. 000961987
310 SOUTH STREET
MORRISTOWN, NEW JERSEY 07960
TEL: (973) 539-4500 • FAX: (973) 539-4501
Attorneys for Plaintiff, Boys & Girls Club of Clifton

| | |
|---|---|
| THE BOYS & GIRLS CLUB OF CLIFTON, INC., <br><br> Plaintiff, <br><br> v. <br><br> ST. PAUL FIRE AND MARINE INSURANCE COMPANY, ST. PAUL MERCURY INDEMNITY COMPANY, ST. PAUL GUARDIAN INSURANCE COMPANY, ST. PAUL FIRE AND CASUALTY COMPANY, THE TRAVELERS COMPANIES, INC., and XYZ CORPORATIONS 1-10 (said names being fictitious insurance companies) <br><br> Defendants. | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY** <br><br> **Case No.** <br><br><br> **COMPLAINT FOR DECLARATORY JUDGMENT ON BEHALF OF THE BOYS & GIRLS CLUB OF CLIFTON, INC.** |

Plaintiff, The Boys & Girls Club of Clifton, Inc. (the "BGCC" or "Plaintiff") alleging, upon knowledge as to itself and its own acts, and upon information and belief with respect to all other matters and by way of complaint against defendants, St. Paul Fire and Marine Insurance Company and its affiliates including, but not limited to, St. Paul Mercury Indemnity Company, St. Paul Guardian Insurance Company, and St. Paul Fire and Casualty Company ("St. Paul"), the

Travelers Companies, Inc. ("Travelers") and XYZ Corporations 1-10 (said names being fictitious insurance companies) says:

## I. THE PARTIES

### A. Plaintiff

1. The Boys Club of Clifton, formed in 1947, and the Girls Club, formed in 1965, consolidated in 1986 to form a single unit, the Boys & Girls Club of Clifton, Inc. (the "BGCC"). The BGCC's headquarters are located at 822 Clifton Avenue, Clifton, New Jersey 07013.

### B. Defendants

2. Defendants are insurance companies:

(i) which are licensed and/or authorized to do business in the State of New Jersey and/or which have, within the time periods relevant to this litigation, transacted business in the State of New Jersey for the purpose of realizing pecuniary benefit. Such acts included contracting to supply services in New Jersey and to insure persons, property, or risks located within New Jersey; and/or

(ii) which have agreed in the insurance policies which they sold to the BGCC, their predecessors and/or subsidiaries, to submit at the BGCC's request to the jurisdiction of any court of competent jurisdiction in the United States, and to comply with all requirements necessary to give such court jurisdiction.

3. Defendants, St. Paul Fire and Marine Insurance Company and its affiliates including, but not limited to, St. Paul Mercury Indemnity Company, St. Paul Guardian Insurance Company, and St. Paul Fire and Casualty Company ("St. Paul"), and the Travelers Companies, Inc. (hereinafter referred to as "Travelers") are, upon information and belief, insurance companies headquartered in New York City, New York and/or Hartford, Connecticut, which at

all relevant times hereto was licensed to conduct business in the State of New Jersey and did business in the State of New Jersey.

4. St. Paul subsequently merged with the Travelers Companies, Inc. in or around 2004, and as such, Travelers is the successor in interest by merger to St. Paul Fire and Marine Insurance Company and its affiliates including, but not limited to, St. Paul Mercury Indemnity Company, St. Paul Guardian Insurance Company, and St. Paul Fire and Casualty Company.

5. The BGCC alleges, upon information and belief, that defendants XYZ Corporations 1-10, inclusive, are corporations or other business entities which have or continue to operate as insurance companies:

(i) which are licensed and/or authorized to do business in the State of New Jersey and/or which have within time periods relevant to this litigation, transacted business in the State of New Jersey by performing a series of acts in the State for the purpose of realizing pecuniary benefit. Such acts included contracting to supply services in New Jersey to insure persons, property or risks located within New Jersey; and/or

(ii) which have agreed in the insurance policies which they sold to the BGCC, their predecessors and/or subsidiaries, to submit, at the BGCC's request, to the jurisdiction of any court of competent jurisdiction in the United States and to comply with all requirements necessary to give such Court jurisdiction. The names of such corporations or business entities are either unknown to the BGCC at the present time or said insurance companies are known, but have yet to deny coverage to the BGCC for the claims relevant hereto. At such time as the BGCC ascertain the true names and capacities of the aforesaid defendants and/or said

defendants deny coverage, the BGCC will seek leave to amend this complaint to insert the true names and capacities of said defendants.

## II.   JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1), because diversity exists as the Plaintiff is a New Jersey corporation with headquarters in Clifton, New Jersey and Defendants are incorporated in the State of Minnesota with corporate headquarters in New York City, New York, and as the sum in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court also has personal jurisdiction over this matter because the claims involve a case of actual controversy within the District of New Jersey seeking the declaration of rights and other legal relations under policies of insurance allegedly issued by St. Paul and Travelers to the BGCC under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a). Additionally, each of the named defendants was authorized to do business in the United States of America, including the State of New Jersey and maintained offices in the State of New Jersey within the time period relevant to the causes of action stated herein and/or have transacted business within New Jersey by, inter alia, doing a series of acts in New Jersey for the purpose of realizing pecuniary benefit; contracting to insure persons, property or risks located within New Jersey.

8. Venue is proper in this Court because the underlying claims allegedly occurred at the BGCC's facility in the City of Clifton, Passaic County, New Jersey

## III.   BACKGROUND AND NATURE OF THIS ACTION

### A.   Underlying Claims Against the BGCC

9. This case arises out of the alleged sexual abuse of Plaintiff, John Doe, with the initials T.L. (hereinafter "T.L.") in the action entitled, *John Doe, with the initials T.L. v. The Boys & Girls Club of Clifton, Case No. 2:20-cv-03008-JXN-ESK*, currently pending in the United States District Court, District of New Jersey, when he was a minor attending the Boys and Girls Club of Clifton, New Jersey in the 1960s.

10. The allegations of the Second Amended Complaint in the underlying action assert that Plaintiff, T.L. was sexually abused by a former employee of the BGCC named Alfred Abruscato during the time period from 1962 to 1966 at the BGCC's facilities in Clifton, New Jersey and Jefferson Township, New Jersey.

11. T.L.'s Second Amended Complaint further alleges that at all materials times hereto, Abruscato was acting as an employee of BGCC and/or BGCA (the "Boys and Girls Club of America") and was engaged to perform services for them and was subject to their control or right to control the physical conduct required to perform such service.

12. T.L.'s Second Amended Complaint further alleges that he was sexually abused on three (3) instances by Abruscato, twice inside the BGCC's facilities in Clifton, New Jersey and once at the BGCC's overnight camp known as Camp Clifton in Jefferson Township, New Jersey.

13. T.L.'s Second Amended Complaint further alleges that the BGCC and BGCA owed a duty of care to all minor persons, including Plaintiff, who were likely to come within the influence or supervision of Abruscato, in his role as director, counselor, agent, servant, supervisor, and/or volunteer.

14. T.L.'s Second Amended Complaint further alleges that the BGCC and BGCA breached their duties of care in one or more of the following ways:

a. Negligently hiring Abruscato as they knew or should have known that he posed a threat of sexual abuse to children;

b. Negligently retaining Abruscato as they knew or should have known that he posed a threat of sexual abuse to children;

c. Negligently directing Abruscato as they knew or should have known that he posed a threat of sexual abuse to children;

d. Negligently supervising Abruscato as they knew or should have known that he posed a threat of sexual abuse to children;

e. Failing to investigate the background of Abruscato before placing him into close contact with Plaintiff and other students;

f. "Covering up" or otherwise failing to disclose the harmful acts of Abruscato;

g. Failing to warn Plaintiff, his parents and/or legal guardians of Abruscato's conduct despite having constructive knowledge of sexual abuse;

h. Failing to warn Plaintiff, his parents and/or guardians of Abruscato's conduct despite having actual knowledge of sexual abuse;

i. Assigning or allowing Abruscato to have contact with Plaintiff despite having constructive and/or actual knowledge of sexual abuse;

j. Minimizing, ignoring or excusing employee misconduct over a period of decades;

k. Failing to provide a safe environment to children and other members of the Boys and Girls Club of Clifton;

l. Failing to train school employees to identify signs of child molestation by fellow employees;

m. Failing to implement and maintain effective policies and procedures to prevent sexual abuse and abuse of children;

n. Failing to investigate complaints of abuse properly;

o. Failing to report Abruscato's sexual abuse to appropriate law enforcement agencies; and

p. Failing to exercise due care under the circumstances.

15. T.L.'s Second Amended Complaint further alleges that as a direct result of the BGCC's and BGCA's negligence, T.L. suffered and will continue to suffer great, permanent mental and physical harm, including but not limited to severe emotional distress, humiliation, embarrassment, and loss of self-esteem.

16. The BGCC has expended substantial costs and will expend substantial costs in defending and addressing the underlying claims raised against it.

### B. Insurance Coverage for these Underlying Claims

17. Based on the recollection of Gary O. Foerester, former president of the Alfred C. Sinn Insurance Agency and former trustee of the BGCC during periods relevant to the underlying claims asserted against it, the BGCC was insured by St. Paul Fire and Marine Insurance Company and its affiliates including, but not limited to, St. Paul Mercury Indemnity Company, St. Paul Guardian Insurance Company, and St. Paul Fire and Casualty Company ("St. Paul") under general liability insurance policies for periods relevant to the underlying claims asserted against the BGCC.

18. Moreover, by virtue of his employment with the Alfred C. Sinn Agency, Mr. Foerester handled the BGCC account at the Alfred C. Sinn Agency and specifically recalled that St. Paul issued general liability coverage to the BGCC for periods relevant to the underlying

7

claims arising out of operations at both the BGCC's facility in Clifton as well as its overnight camp facility formerly known as Camp Ranger or Camp Clifton in Jefferson Township.

19. According to Mr. Foerester's specific recollections, both BGCC's operations at its Clifton facility and at the Camp Clifton facility in Jefferson Township, New Jersey were covered and contained within the BGCC's general liability insurance policies with St. Paul.

20. The BGCC, through insurance policies purchased by it, has had in full force and effect primary general liability insurance policies with one or more primary insurance carriers including St. Paul, Travelers, and XYZ Insurance Companies 1 through 10, affording general liability insurance coverage to the BGCC at all relevant periods herein. Each such primary policy was sold to the BGCC or their affiliates naming it as an insured and/or additional insured, and each provides comprehensive general liability insurance coverage for all operations conducted by the BGCC and any affiliated companies.

21. The BGCC paid substantial premiums to obtain the primary liability insurance coverage as identified herein.

22. In consideration of the premiums paid, the primary policies require the insurer to pay all sums that the BGCC and/or their parents and successors, may be obligated to pay because of property damage or bodily injury caused by an "accident" or "occurrence" and to defend and indemnify the BGCC and their successors and parents in connection therewith.

23. The BGCC also had in full force in effect one or more primary and/or excess policies with XYZ Corporations 1-10 (said names being fictitious insurance companies) for periods between 1967 and the present. Each such policy was sold to the BGCC or its affiliates as the insured and includes the BGCC or its affiliates as an additional insured and each provides limits of liability.

24. The BGCC has performed fully and complied with all of the terms and conditions of the policies required to be performed by it.

25. Each of the insurance policies relates to a policy period during which bodily injury is alleged to have taken place or is alleged to have been involved in connection with underlying claims which have been asserted by T.L in the underlying lawsuit.

26. Pursuant to the terms of the policies of insurance, the defendants are obligated to defend the BGCC, and to pay the cost of its defense, and to indemnify it for sums that the BGCC has paid or may be become obligated to pay in connection with underlying claims.

27. The BGCC incurred costs and liabilities in connection with the underlying claims and continue to incur additional defense costs and liabilities in connection therewith.

28. The BGCC has given notice of the underlying claims to the defendant insurers and have requested that defendants honor their obligations pursuant to the primary policies.

29. Defendants have either failed or refused to honor their obligations to the BGCC pursuant to the primary insurance policies.

30. Defendants failure to honor obligations to the BGCC have harmed and will continue to harm the BGCC because such failure has required it to expend sums for their defense and to pay for liabilities incurred to date in connection with the underlying claims and has further required the BGCC, as a matter of prudent business planning to prepare against the possibility that they will receive no indemnification for future defense costs and potential liabilities.

**FIRST COUNT**
**(Declaratory Judgment)**

31. The BGCC repeat the allegations of paragraphs 1 through 30 hereof as if set forth at length herein.

32. Defendants, each and all of them, have failed to honor or have disputed or will dispute their obligations to defend and indemnify the BGCC and to pay the BGCC's defense costs in connection with the underlying claims.

33. Defendants, XYZ Corporations 1-10 (said names being fictitious insurance companies) as primary and/or excess insurers, have failed to honor or have disputed or will dispute their obligation to pay the BGCC's liabilities, including defense costs, in connection with the underlying claims.

34. By reason of the foregoing, an actual or justiciable controversy exists between the BGCC and each such Defendant regarding the duties and obligations under the insurance policies issued by such Defendants, and a judicial declaration is necessary to determine the BGCC's rights and Defendants' duties regarding the underlying claims.

**WHEREFORE,** the BGCC demands judgment in their favor against Defendants:

1. Declaring pursuant to the terms of the primary policies, that the Defendants are obligated to defend and indemnify the BGCC and to pay costs of the BGCC defense in connection with the underlying claims;

2. Declaring that the BGCC is entitled to designate which of the primary policies and policy years shall be called upon to provide such defense and indemnity;

3. Enjoining the Defendants from failing and refusing:

    (a) to defend the BGCC in all claims arising from the events described above;

    (b) to indemnify the BGCC against all liabilities and expenses which have been and will be incurred with respect to any such claims; and

    (c) to reimburse and compensate the BGCC for all losses and damages sustained ;

4. Granting the BGCC specific performance of the contracts of insurance issued by the Defendants;

5. For money damages together with prejudgment interest and post judgment interest;

6. For costs of suit;

7. For counsel fees provided for in a declaratory judgment action; and

8. For such other and further relief as the court may deem just and proper.

## SECOND COUNT
**(Breach of Contract)**

35. The BGCC repeats the allegations contained in paragraphs 1 through 34 as if set forth at length herein.

36. The BGCC has incurred and will continue to incur defense costs and liabilities in connection with the underlying claims.

37. Defendants have failed and refused or will refuse to reimburse and indemnify the BGCC for such costs and liabilities in the underlying claims.

38. Defendants, XYZ Corporations 1-10 (said names being fictitious insurance companies) as excess insurers have failed and/or refused or will refuse to reimburse and indemnify the BGCC for such costs and liabilities.

39. By reason of the foregoing, the Defendants have breached their obligation under the primary policies sold to the BGCC and/or their successors and/or parents, and are liable to the BGCC for damages, costs, and payment and all other sums incurred by the BGCC or which may be incurred, together with the costs and disbursements of this action, including but not limited to reasonable attorneys' fees and prejudgment and post judgment interest.

**WHEREFORE,** the BGCC demands judgment in their favor against Defendants:

1. Declaring pursuant to the terms of the primary policies, that the Defendants are obligated to defend and indemnify the BGCC and to pay costs of the BGCC defense in connection with the underlying claims;

2. Declaring that the BGCC is entitled to designate which of the primary policies and policy years shall be called upon for such defense and indemnity;

3. Enjoining the Defendants from failing and/or refusing:

(a) to defend the BGCC in all claims arising from the events described above;

(b) to indemnify the BGCC against all liabilities and expenses which have been and will be incurred with respect to any such claims;

(c) to reimburse and compensate the BGCC for all losses or damages sustained;

4. Granting the BGCC specific performance of the contracts of insurance issued by the Defendants;

5. For money damages together with pre-judgment and post-judgment interest;

6. For cost of suit;

7. For counsel fees as provided for a declaratory judgment action; and

8. For such other and further relief as the court may deem just and proper.

**COFFEY & ASSOCIATES**
Gregory J. Coffey, Esq.
NJ Attorney ID No. 000961987
310 SOUTH STREET
MORRISTOWN, NEW JERSEY 07960
TEL: (973) 539-4500 • FAX: (973) 539-4501
Attorneys for Plaintiff, Boys & Girls Club of Clifton

By: ___*/s/ Gregory J. Coffey*___
        GREGORY J. COFFEY

Dated: February 9, 2023

## **DESIGNATION OF TRIAL COUNSEL**

Please take notice that Gregory J. Coffey is hereby designated as trial counsel for Plaintiff, The Boys & Girls Club of Clifton, Inc. in this action.

                               **COFFEY & ASSOCIATES**
                               Gregory J. Coffey, Esq.
                               NJ Attorney ID No. 000961987
310 SOUTH STREET
MORRISTOWN, NEW JERSEY 07960
TEL: (973) 539-4500 • FAX: (973) 539-4501
Attorneys for Plaintiff, Boys & Girls Club of Clifton

By:   */s/ Gregory J. Coffey*
       GREGORY J. COFFEY

Dated: February 9, 2023